IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| NICHOLAS ALVAREZ, | : | CIV. NO. 20-18680 (RMB) |
| Petitioner | : | |
| v. | : | **OPINION** |
| DAVID ORTIZ, | : | |
| Respondent | : | |

**RENÉE MARIE BUMB, United States District Judge**

This matter comes before the Court upon Petitioner Nicholas Alvarez's petition for writ of habeas corpus under 28 U.S.C. § 2241 (Pet., Docket No. 1); Respondent's answer to the petition and opposition to relief (Docket No. 4); and Petitioner's briefs in reply to the answer. (Docket Nos. 5, 6.) Petitioner alleges due process violations in connection with his July 30, 2020 prison disciplinary hearing at the Federal Correctional Institution at Fort Dix, New Jersey ("FCI Fort Dix") where he was found guilty of possessing a cell phone. For the reasons discussed below, the Court will deny the habeas petition.

I.   BACKGROUND

Petitioner was serving a federal sentence at FCI Fort Dix at all relevant times alleged in the petition. (Declaration of Corrie Dobovich ("Dobovich Decl."), Ex. 1 at 2, Docket No. 4-2 at 6.) Assuming that Petitioner receives all good conduct time available to him at the time the answer was filed, his projected release date is April 2, 2028. (*Id.* at 4, Docket No. 4-2 at 6.)

## II. THE DISCIPLINARY PROCEEDINGS

On July 10, 2020, Petitioner received an incident report at FCI Fort Dix, charging him with possession of a hazardous tool and unauthorized contact with the public, a violation of BOP Disciplinary Code 108 and 327, respectively. (Dobovich Decl., Ex. 3, ¶¶ 9, 14, Docket No. 4-2 at 12.) The incident report charged:

> On July 10, 2020, at approximately 8:30 a.m. SIS Lieutenant Atkinson reviewed the social media webpage of inmate Alvarez, Nicholas, Reg. NO. 64636-054, on a social media website "Facebook". It was the social media page on Facebook of "Nick Cruz" which is the social media page of inmate Alvarez. This investigator also reviewed video chat screen shots from July 04, 2020, of inmate Alvarez it's apparent by the background of the screen shots that inmate Alvarez was in the secure confines of FCI Ft. Dix in inmate living quarters. Inmate Alvarez was in a twelve man room in a housing unit using an illegal cell phone to video chat with. These findings were noted due to the white in color walls, and red in color piping to the sprinkler system on the ceiling. In this video chat inmate Alvarez is wearing a black in color kufi, black in color head phones and a brown in color t-shirt. Based on the physical evidence it is concluded that inmate Alvarez possessed and used an illegal cellular phone to video chat with while incarcerated at F.C.I. Ft. Dix to have unauthorized contact with the public.

(*Id.*, ¶ 11.)  A picture sheet showing screen shots from Petitioner's alleged video chat was attached to the incident report. (*Id.*, ¶ 25.)

Petitioner was provided with a copy of the incident report that same day. (*Id.*, ¶¶ 14-16.) When the report was delivered to Petitioner, staff advised him of his rights and Petitioner understood and declined to make a statement. (*Id.*, ¶¶ 23-24.) The investigating officer referred the incident report to the Unit Discipline Committee ("UDC") for an initial hearing. (*Id.*, ¶ 27.) Six days later, July 16, 2020, the UDC held

an initial hearing on Petitioner's incident report, and Petitioner made no comment. ((Dobovich Decl., Ex. 3, ¶¶ 17-21, Docket No. 4-2 at 12-13.) The UDC referred the incident report to a Disciplinary Hearing Officer ("DHO") for final disposition, based on the seriousness of the charged offense. (*Id.*, ¶ 19.) On the day of the UDC hearing, Petitioner received the form "Notice of Discipline Hearing Before the DHO." (Dobovich Decl., Ex. 5, Docket No. 4-2 at 18.) Petitioner indicated on the form that he did not want to call any witnesses, but that he would like to have Officer Gallop serve as his staff representative. (*Id.*) Petitioner also signed an "Inmate Rights at Discipline Hearing" form, acknowledging that staff had advised him of his rights in connection with the disciplinary hearing. (Dobovich Decl., Ex. 4, Docket No. 4-2 at 16.)

Petitioner's DHO hearing was held on July 30, 2020. (Dobovich Decl., Ex. 7, ¶ I.B, Docket No. 4-2 at 23.)  At the hearing, Petitioner waived his right to a staff representative by signing two waiver forms, witnessed by staff member K. Hampton. (*Id.*, ¶ II.A ; Dobovich Decl., Ex. 6, Docket No. 4-2 at 20-21.) Petitioner further waived his right to call witnesses. (Dobovich Decl., Ex. 7, ¶ III.C.1, Docket No. 4-2 at 23.) Petitioner testified that he was not guilty and further stated that the reporting SIS lieutenant provided false dates concerning Petitioner's placement in the SHU, and he accused the lieutenant of acting unprofessionally. (*Id.*, ¶¶  III.B., V.)

In her report, the DHO stated that she considered photographs of Petitioner's social media page on "Facebook Chat" and screen shots from July 4, 2020, which depicted Petitioner in FCI Fort Dix's inmate living quarters. (*Id.*, ¶ V, Docket No. 4-2

at 24.) At the conclusion of the hearing, the DHO determined that Petitioner was guilty of violating Code 108 but dismissed the charge for violation of Code 327. (Dobovich Decl., Ex. 7, ¶ V, Docket No. 4-2 at 24.) The DHO explained her decision, noting that the reporting SIS lieutenant reviewed Petitioner's Facebook account and saw video chat messages showing Petitioner in the FCI Fort Dix inmate living quarters. (*Id.*) The DHO agreed with the lieutenant's conclusions. (*Id.*) The DHO considered Petitioner's testimony that he did not possess a cell phone and his accusation that the lieutenant falsified the dates in the incident report, but Petitioner had no evidence to dispute the lieutenant's account. (*Id.*) The DHO considered the photographs of the Facebook chat. (*Id.*) Thus, based upon all the evidence, the DHO found that Petitioner committed the prohibited act of possessing a hazardous tool and imposed the following sanctions: (1) disallowance of 40 days good conduct time; (2) monetary fine of $500; and (3) loss of visiting privileges for six months. (*Id.*, ¶ VI, Docket No. 4-2 at 25.) The DHO imposed these sanctions because the offense conduct threatened the health, safety, and welfare of other inmates, and has led to serious damage and injury. (*Id.*) Petitioner received a copy of the DHO report on September 11, 2020. (*Id.*)

III.   **THE PETITION, ANSWER AND REPLY BRIEFS**

In his habeas petition, Petitioner seeks relief from the disciplinary sanctions on four grounds: (1) Box 1 of the incident report was not completed, and the instructions for the incident report state that any entries not completed will be voided by staff, but staff ignored the instructions; 2) the SIS lieutenant falsified the incident report;

Petitioner was not in the inmate living quarters at the time of the alleged incident and never possessed a cell phone; and 3) Petitioner was deprived of a staff representative to view all the evidence; and 4) the DHO was biased. (Pet., ¶ 13, Docket No. 1 at 7-11.) Petitioner seeks appointment of counsel in this matter. (Pet., ¶ 15.)

Respondent submitted an answer and opposed habeas relief, arguing that Petitioner received all due process to which he was entitled. (Answer, Docket No. 4.) Specifically, Respondent contends that: 1) the failure to identify the institution in Box 1 of the incident report was harmless error; 2) Petitioner did not establish that the DHO was biased; 3) Petitioner was not entitled to a staff representative and waived his request at the hearing; and 4) sufficient evidence supported the DHO's conclusion that Petitioner possessed a cell phone. Respondent maintains that Petitioner's administrative remedy appeal was pending before the BOP Northeast Regional Office at the time the answer was filed, but Respondent does not seek dismissal based on failure to exhaust available administrative remedies.

In his first reply to Respondent's answer, Petitioner requested that this Court prevent the Bureau of Prisons from transferring him to another prison based on his finding of guilt in the prison disciplinary proceeding that is the subject of this petition. (Reply, Docket No. 5.) Such relief is not available. Even if this Court were to grant the habeas petition, the only proper remedy would be "an order directing a bona fide curative hearing free of the procedural errors that tainted the original hearing." *Wilson v. Hollingsworth*, No. 15-0076 (RMB), 2015 WL 333314, at *5 (D.N.J. Jan. 23, 2015) (quoting *Mitts v. Zickefoose*, 869 F. Supp. 2d 568 (D.N.J. 2012) (citations omitted)).

5

For his second reply to Respondent's answer, Petitioner reiterates his claim that the incident report was not completed in compliance with its own instructions. (Reply Brief at 1, Docket No. 6.) Petitioner further points to errors in the answer, including: 1) Respondent's answer falsely states there are Facebook Chat photographs because Petitioner does not have a Facebook page; 2) Petitioner was not sentenced in the Eastern District of Wisconsin, he was sentenced in the Southern District of New York;[1] 3) Respondent's answer falsely states that Petitioner "committed Conduct that Disrupts (Code 199) most like possession of a hazardous tool, Code 108[,]" although Petitioner was never charged with violating Code 199; and 4) Respondent's answer misstates the sanctions imposed. (*Id.* at 2.) Petitioner also challenges the accuracy of the Declaration of Corrie Dobovich with respect to his attempts to exhaust administrative remedies.[2] (*Id.* at 3.)

IV.    **REQUEST FOR APPOINTMENT OF COUNSEL**

Habeas petitioners are not entitled to appointment of counsel unless an evidentiary hearing is held. *See*, Rule 8(c), Rules Governing Section 2254 Cases in the United States District Courts (applicable to habeas petitions under 28 U.S.C. § 2241 under Rule 1(b), Scope of the Rules). A court, however, has discretion to appoint

---

[1] This appears to be a clerical error in the Declaration of Corrie Dobovich. The exhibit submitted in support of her declaration shows that Petitioner is serving a sentence imposed by the United States District Court, Southern District of New York. (Docket. No. 4-2 at 6.) In any event, the identity of Petitioner's sentencing court is irrelevant to his due process claims.

[2] The issue of Petitioner's exhaustion of administrative remedies is not relevant because Respondent does not seek dismissal for failure to exhaust administrative remedies.

6

counsel to a habeas petitioner if "the interests of justice so require" and the petitioner is financially unable to obtain representation. 18 U.S.C. § 3006A(a)(2)(B). In determining whether the interests of justice require appointment of counsel, courts should first determine whether the petition presents a nonfrivolous claim, and if appointment of counsel will benefit the petitioner and the court. *Reese v. Fulcomer*, 946 F.2d 247, 264 (3d Cir. 1991). Here, the petition presents a nonfrivolous claim, but appointment of counsel would not be of assistance because Petitioner has ably presented the factual and legal bases of his claims, which can be determined on the record without an evidentiary hearing because any errors in the proceeding were harmless. *See id.* ("Courts have held, for example, that there was no abuse of a district court's discretion in failing to appoint counsel when … the petitioner had "a good understanding of the issues and the ability to present forcefully and coherently his contentions." *La Mere v. Risley*, 827 F.2d 622, 626 (9th Cir. 1987)). Therefore, the Court will determine the habeas petition on the record, and deny Petitioner's request for appointment of counsel.

## V.      DISCUSSION

### A.      Standard of Law

In *Wolff v. McDonnell*, the Supreme Court described the minimum due process required before an inmate may be sanctioned with loss of good-time credits. 418 U.S. 539, 563-71 (1974). The due process protections include (1) written notice of the charges at least twenty-four hours prior to a hearing; (2) an opportunity to call witnesses and present evidence in defense; (3) opportunity to receive assistance from

an inmate representative; (4) a written statement of the evidence relied on and reasons for the disciplinary action; and (5) an appearance before an impartial decision-making body. *Wolff*, 418 U.S. at 563–567. The Supreme Court later held that "some evidence" is the standard of review required to affirm an inmate's finding of guilt of a prison rule infraction. *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* The standard is met if any evidence in the record could support the conclusion by the tribunal. *Id.* at 455-56.

The BOP regulations for prison disciplinary proceedings provide procedures in excess of the minimum due process described in *Wolff*. S*ee, Von Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994) ("While the regulations substantially track the procedures outlined in *Wolff*, in some respects they go beyond what the due process clause itself requires") (internal citations omitted). Under 28 C.F.R. § 541.5, when BOP staff have reason to believe that an inmate committed a prohibited act, the BOP must prepare an incident report and refer the matter for investigation. After an investigation, the incident report is provided to a UDC pursuant to 28 C.F.R. § 541.7, for an initial hearing. A DHO hearing must be conducted pursuant to the procedures set forth at 28 C.F.R. § 541.8. The procedures require the BOP to give inmates advance written notice of the charges no less than 24 hours before the DHO hearing. 28 C.F.R. § 541.8(c). Inmates are entitled to the assistance of a staff representative for the DHO hearing. 28 C.F.R. § 541.8(d). The inmate has the right to be present throughout the

DHO hearing, except during deliberation or when institutional security would be jeopardized. 28 C.F.R. § 541.8(e).

In a DHO hearing, the inmate is entitled to make a statement, present documentary evidence, and to submit names of requested witnesses and have them called to testify, if reasonably available. 28 C.F.R. § 541.8(f). "The DHO's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence." *Id.* Once a decision has been made by the DHO, the DHO must prepare a record of the proceedings sufficient to document that the inmate was advised of his rights, the DHO's findings, the specific evidence relied upon by the DHO, the sanctions imposed, the reasons for the DHO's decision and for the sanctions imposed, and the record must be delivered to the inmate. 28 C.F.R. § 541.8(h).

**B.     Analysis**

The Court will begin by addressing Petitioner's remaining claims of error in the answer. According to the Incident Report and the Notice of Disciplinary Hearing Before the (DHO), Petitioner correctly notes that he was charged with violation of Code 108 and not Code 199. (Dobovich Decl., Exhibits 5, 7, Docket No. 4-2 at 12, 18.) This error is not relevant to Petitioner's due process claims because he was found guilty and sanctioned only for violation of Code 108, possession of a cell phone. Petitioner also asserts that the answer misstates the sanctions imposed on him. The answer states that Petitioner was sanctioned with 41 days loss of good conduct time, a $500 fine, and six months loss of visiting privileges. (Answer, Docket No. 4 at 20.) The DHO Report, attached to the answer, indicates that Petitioner was sanctioned,

solely for violation of Code 108,[3] with 41 days loss of good conduct time, a $500 fine, and 365 days loss of visiting privileges. (Dobovich Decl., Ex. 7, ¶ V, Docket No. 4-2 at 25.) Petitioner has not challenged the sanctions as excessive.[4] Therefore, this clerical error is harmless.

### 1. Failure to Complete Box 1 of the Incident Report

Box 1 of the Incident Report form is used to identify the name of the Institution where the alleged BOP Code violation occurred. (Dobovich Decl., Ex. 3, ¶ 1, Docket No. 4-2 at 12.) The minimum due process protections described in *Wolff* do not include completion of any particular form to notify the inmate of the charges, let alone that every box on a form be completed. Petitioner was undoubtedly aware of which BOP institution he was in on July 10, 2020, the date that he was accused of possession of a cell phone. Thus, even if due process required the BOP to follow its own regulations, any error in failing to complete the form as instructed was harmless. *See*, *Ancrum v. Holt*, 506 F. App'x 95, 98 (3d Cir. 2012) (citing *Elkin v. Fauver*, 969 F.2d 48, 53 (3d Cir. 1992) (noting that harmless error analysis applies to cases involving prison disciplinary proceedings).

---

[3] The charge of violating Code 327, unauthorized contact with the public, was dismissed. (Docket No. 4-2 at 24.)

[4] Sanctions that fall within the appropriate Table(s) under 28 C.F.R. § 541.3, as Petitioner's sanctions for violation of Code 108 do here, are not excessive. *Wallace v. Ebbert*, 505 F. App'x 124, 125 (3d Cir. 2012).

### 2. Whether the DHO's finding of guilt is supported by some evidence

Petitioner contends that SIS Lieutenant Atkinson falsely accused him of being in a twelve-man room in inmate living quarters in FCI Fort Dix, when Petitioner was, in fact, housed in the R&D unit on July 4, 2020, and in the segregated housing unit ("SHU") on July 10, 2020. Because it is not this Court's role to address the credibility of the witnesses or weigh the evidence introduced at a prison disciplinary proceeding, but only to determine whether "some" evidence supported the finding of guilt, this Court construes the allegation as a due process claim that the DHO's finding of guilt is not supported by some evidence. *See*, *Lasko v. Holt*, 334 F. App'x 474, 476 (3d Cir. 2009) (describing court's role in reviewing evidence in record of prison disciplinary hearing (citing *Hill*, 472 U.S. at 455; *Thompson v. Owens*, 889 F.2d 500, 501–02 (3d Cir. 1989)).

In his administrative remedy appeal and the habeas petition, Petitioner explained that although the incident report was dated July 10, 2020, he was actually put in detention for this incident from July 4, 2020 through July 7, 2020 in the R&D unit because the SHU was full. He was moved to the SHU on July 10, 2020. (Pet., Docket No. 1 at 9.) Petitioner requested review of the SENTRY report to see where he was housed. (Exhibit to Petition, Docket No. 1-1 at 6.) The DHO rejected Petitioner's alibi for the date in question because the SENTRY report indicated that Petitioner was placed in the SHU at 9:03 a.m. on July 10, 2020, and the SIS lieutenant indicated in the incident report that he only became aware of the incident at 8:30 a.m. on July 10, 2020, although the screen shots at issue were from July 4, 2020. (Dobovich

11

Decl., Ex. 7, Docket No. 4-2 at 24.) Thus, the DHO properly relied on "some" evidence in making this determination, the incident report and the SENTRY report.

Petitioner also challenges the DHO's finding of guilt based on the alleged screen shots because "Facebook pages do not look like that," and he does not have a social media page. The DHO reviewed the screen shots and was able to consider whether they came from a Facebook page. The DHO found SIS Lieutenant Atkinson's incident report credible because he had no reason to fabricate the incident report, and there were photographs of Petitioner in the screen shots. (Dobovich Decl., Ex. 7 at ¶ V, Docket No. 4-2 at 24.) Therefore, some evidence supported the DHO's finding of guilt. Additionally, pursuant to 28 C.F.R. ¶ 541.8(f), because Petitioner testified that he was not guilty, the DHO regulations required the DHO's determination to be supported by the greater weight of the evidence. However, it is the role of the DHO to weigh the evidence, and the court's role only to determine whether there was "some evidence." *See*, *Lasko*, 334 F. App'x at 476 ("[t]he [some evidence standard] is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence.")

### 3.   Whether Petitioner was deprived of a staff representative

Petitioner asserts that he requested a staff representative before the DHO hearing, and he never signed a waiver, evidence by the fact that he was handcuffed when he went before the DHO. (Pet. at ¶ 13, Docket No. 1 at 11.) Petitioner maintains that if he had a staff representative to view all of the evidence, he would not have been found guilty because the staff representative would have found exculpatory evidence. Respondent argues that Petitioner is not entitled to a staff

12

representative under *Wolff* because Petitioner is not illiterate and the charge against him was not complex. (Answer, Docket No. 4 at 16-17.) Insofar as the BOP regulations permit any inmate to have a staff representative, Petitioner signed two waiver forms after his initial request for a staff representative. (*Id.* at 17.) In his reply brief, Petitioner reiterated his claim that he never signed the waiver forms because he was handcuffed. (Reply Brief, Docket No. 6 at 4.)

Due process requires only that an inmate have a staff representative if the inmate is illiterate or the issue at the hearing is complex. *Wolff*, 418 U.S. at 570. Even if this Court accepts as true Petitioner's claim that he did not sign the waiver forms contained in Exhibit 6 to the Dobovich Declaration,[5] harmless error review applies to claims that the BOP failed to follow its own regulation. 28 C.F.R. § 541.8(d). *See, Ancrum*, 506 F. App'x at 98 (citing *Elkin*, 969 F.2d at 53) (noting that harmless error analysis applies to cases concerning prison disciplinary proceedings). Given the photographic evidence of the screen shots from "Nick Cruz's" Facebook page, and SIS Lieutenant Atkinson's written statement that he accessed the Facebook page of "Nick Cruz" and identified it as belonging to Petitioner, Petitioner has failed to establish how the outcome of the hearing was likely to have been different if he had a staff representative. Apart from his denial of having a Facebook page, Petitioner has not described any exculpatory evidence that his staff representative would have discovered. In connection with his claim of not being in the inmate living quarters on

---

[5] This claim is dubious at best because Petitioner's signature was witnessed by staff members who also signed the waivers. (*See*, Ex. 6, Docket No. 4-2 at 20-21.) The forms certainly could have been signed on the day of the hearing before Petitioner was taken before the DHO in handcuffs.

the day the screen shots were taken, Petitioner did not call any witnesses to establish that he was in the R&D unit, not the inmate living quarters, for the entire day. Further, the DHO reviewed the SENTRY report and found that the incident was not discovered until July 10, 2020, and Petitioner was placed in the SHU after the incident report was written. Therefore, even assuming Petitioner was deprived of a requested staff representative, the error was harmless.

### 4. Whether the DHO was biased

Petitioner asserts that the DHO was biased because he did not listen to Petitioner, and the DHO was biased toward the SIS lieutenant who reported the incident. (Pet. at ¶ 13, Docket No. 1 at 11.) In his reply brief, Petitioner submits that the DHO acted unfairly by not dismissing the charge because Box 1 of the incident report was not completed, and the DHO denied Petitioner a staff representative. (Reply Brief, Docket No. 6 at 4.) General claims of bias, such as those here, are "not sufficient to indicate the type of "direct personal or otherwise substantial involvement ... in the circumstances underlying the charge" that shows the DHO's impartiality." *Lewis v. Canaan*, 664 F. Appx. 153, 156 (3d Cir. 2016) (quoting *Meyers v. Alldredge*, 492 F.2d 296, 306 (3d Cir. 1974)). The DHO listened to Petitioner's testimony at the hearing, but found the SIS lieutenant's written statement, corroborated by photographic evidence, more credible. Therefore, Petitioner has not established that he was denied due process in connection with his prison disciplinary proceedings.

## VI. CONCLUSION

For the reasons discussed above, the Court denies the habeas petition. An appropriate Order follows.

Date: **June 30, 2022**

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**
